UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN LEWIS,

        Plaintiff,

v.                                                                    Case Number 13-11693
                                                                      Honorable David M. Lawson
                                                                      Magistrate Judge Mark A. Randon
NATIONSTAR MORTGAGE,
SCHNEIDERMAN & SHERMAN, P.C.,
and BANK OF AMERICA, N.A.,

        Defendants.

_____/

**OPINION AND ORDER ADOPTING REPORTS AND
RECOMMENDATIONS, OVERRULING PLAINTIFF'S AND DEFENDANT'S
OBJECTIONS, GRANTING MOTIONS TO DISMISS AND FOR JUDGMENT
ON THE PLEADINGS BY DEFENDANTS NATIONSTAR
AND BANK OF AMERICA, GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT BY DEFENDANT
SCHNEIDERMAN & SHERMAN, AND CONTINUING REFERENCE ORDER**

In a dispute over a mortgage debt, plaintiff Christian Lewis filed a complaint alleging that

the defendants violated the Fair Debt Collection Practices Act (FDCPA) and committed fraud related

to the servicing and foreclosure of his mortgage. The Court referred this case to Magistrate Judge

Mark A. Randon for pretrial management. Thereafter, defendant Bank of America filed a motion

to dismiss, defendant Nationstar Mortgage filed a motion for judgement on the pleadings, and

defendant Schneiderman & Sherman, P.C. filed a motion for summary judgment. Judge Randon

filed a report on August 16, 2013 recommending that Bank of America's motion be granted. He also

filed a report on November 26, 2013 recommending that Nationstar Mortgage's motion be granted

and Schneiderman & Sherman's motion be granted in part. The plaintiff and Schneiderman &

Sherman filed timely objections, and the matters are before the Court for *de novo* review. After

considering the motions, the pleadings, and the magistrate judge's reports in light of the objections

filed, the Court finds that the magistrate correctly determined the issues. Therefore, the Court will adopt the reports and recommendations.

I.

The facts of the case, as discussed by the magistrate judge, are taken from the complaint and the motions papers. It appears that plaintiff Christian Lewis obtained a loan of $138,490 on April 8, 2009 from Countrywide Bank, FSB to purchase property located at 5711 New Meadow Drive, Ypsilanti, Michigan. The loan was secured by a mortgage that was recorded by the Washtenaw County, Michigan register of deeds on April 23, 2009. On June 18, 2012, Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Countrywide Bank, FSB, assigned the mortgage to Bank of America.

Mr. Lewis fell behind on his mortgage payments and stopped making payments altogether on his mortgage after April 1, 2012. On October 18, 2012, Bank of America mailed Mr. Lewis a letter stating that his mortgage was in default and Bank of America intended to foreclose on the property. On December 17, 2012, before foreclosing, Bank of America assigned the mortgage to Nationstar Mortgage, LLC. Curiously, on February 6, 2013, MERS, as nominee for Countrywide Bank, FSB, appears to have assigned Countrywide's interest in the mortgage to Nationstar Mortgage, LLC, even though previously it had assigned its interest in the mortgage to Bank of America. Nationstar mailed Mr. Lewis two letters on December 17, 2012 to inform him that (1) Bank of America had "assigned, sold or transferred" the right to collect his mortgage to Nationstar; (2) Nationstar was now the servicer of his mortgage account; and (3) the current amount due on his loan was $9,358.64. Nationstar also mailed Mr. Lewis a third letter stating that it looked forward to servicing his loan on behalf of "GINNIE MAE."

-2-

Believing he was the victim of mortgage fraud, Mr. Lewis mailed Nationstar a cease and desist letter dated December 19, 2012. Letter, dkt. #26-7.  The letter stated in relevant part:

> I am in receipt of your correspondence.  This is in reference to all accounts associated with the address listed above are fraudulent [sic].  Enclosed you'll find a Theft Affidavit.  I have not reported this matter to the law enforcement agencies and have stated that in the Theft Affidavit.  Please update your record immediately.

> I am [a] victim of **MORTGAGE FRAUD** which is punishable [by] up to **30 YEARS IN FEDERAL PRISON AND A 1,000,000,000 U.S. DOLLAR FINE.**

> **This is your notice[] to "CEASE AND DESIST".**  If you continue to proceed, I will also file the appropriate complaints with the appropriate authorities and invoice this company $1,000.00 US Dollars per violation of the Fair Debt Collection Practice [sic] Act.

> I am NOT in receipt of a contract between your firm and myself bearing my signature which would obligate me to perform for you in any way and you are not to EVER contact me again regarding this matter.

Consider this your first Notice of Administrative Default.

On February 7, 2013, Nationstar sent the plaintiff a letter acknowledging that it received his letter.  Nationstar confirmed that Bank of America assigned Mr. Lewis's mortgage to Nationstar, enclosed documents that verified Mr. Lewis's debt (i.e., the note and security instrument, payment history, HUD 1–settlement statement, and servicing transfer notice); reminded Mr. Lewis that he was ten payments behind on his debt; and provided him with a toll-free number to call if he had any questions.  The letter did not mention "Ginnie Mae."

In the meantime, Schneiderman & Sherman, Nationstar's foreclosure counsel, mailed the plaintiff a letter dated February 5, 2013 stating that it planned to initiate foreclosure proceedings against the property on Nationstar's behalf.  The letter informed Mr. Lewis that the accelerated debt on his mortgage loan, including the principal balance and unpaid interest, was $139,332.90; he had a right to dispute the validity of the debt within thirty days after receipt of the letter; and, if he

-3-

disputed the amount, they would obtain verification of the debt from their mortgage company and mail that information to him.

Mr. Lewis mailed Schneiderman & Sherman a separate cease and desist collection activity letter around February 15, 2013.  That letter stated in relevant part:

> This is a formal notice to cease and desist all phone communication and collection activity.  Nation Star [sic] is committing mortgage fraud.  I deny this debt and all signatures attached [to] this allege[d] debt.  I believe I have been [the] victim of Robo-Signing and will be reporting this to the Financial Crimes Division, and the Attorney General of Michigan . . . .
> Pursuant to the Insurance Claims that was [sic] filed on this loan, there are NO pending debts due payable.  If this corporation attempts to conspire to defraud me and my family, I will present my evidence to criminally prosecute all parties involved.

Letter, dkt. #21-3.  Schneiderman & Sherman did not respond and instead continued with foreclosure proceedings.

On March 5, 2013, Mr. Lewis mailed Nationstar, Schneiderman & Sherman, and "Ginnie Mae" a letter purporting to show that neither Nationstar nor Ginnie Mae had a claim against the property.

> Pursuant to Washtenaw County Records recorded in liber: 4926 Page: 302 Instrument number 6092798 dated September 6, 2012; Ginnie Mae and Nation Star [sic] Mortgage does [sic] not have a claim to the property address listed above.
>
> I, Christian Lewis deny all allege[d] contracts and debts claimed by Ginnie Mae and Nation Star [sic] Mortgage.  I, Christian Lewis deny all signatures that are stamped to any contract or debt claimed by Ginnie Mae and Nation Star Mortgage.

Compl. at 3; dkt. #21-7.  On March 28, 2013, a non-party credit service, Experian, notified Mr. Lewis that Nationstar had reported a "Bank Adjustment/Deed-in Lieu/Bank Liquidation" on his credit profile.  Dkt. #1 at 12.

-4-

On April 15, 2013, Mr. Lewis filed a complaint in this Court against the defendants alleging violations of the Fair Debt Collection Practices Act and fraud. The property was sold at a sheriff's sale on April 18, 2013, three days later.

In the ensuing months, the parties filed their respective motions. Judge Randon submitted his reports and recommendations, and the plaintiff and defendant Schneiderman & Sherman filed timely objections.

## II.

The filing of timely objections to a report and recommendation requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The Court has reviewed the pleadings, the reports and recommendations, and the plaintiff's and defendant's objections and has made a *de novo* review of the record in light of the parties' submissions.

### A.  Bank of America's Motion to Dismiss

Judge Randon recommended that the Court dismiss the claims under the Fair Debt Collection Practices Act against defendant Bank of America because the complaint does not include specific allegations against that defendant.  In his objections, Mr. Lewis disagrees, arguing that he satisfied the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure.  The plaintiff is incorrect.  To survive a motion to dismiss, a plaintiff must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  Plausibility requires showing more than the sheer possibility of relief but less than a probable entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A careful review of the complaint shows that it contains no factual allegations against Bank of America.  Aside from the case caption, the complaint does not address Bank of America at all.  Mr. Lewis falls well short of satisfying Rule 8, and he has not stated an FDCPA claim against Bank of America.  His complaint against the bank is subject to dismissal under Rule 12(b)(6).

The plaintiff also objects to Judge Randon's recommendation to dismiss his fraud claims against Bank of America.  Mr. Lewis believes that he is not required to specify the time and place of each representation to state a claim for fraud.  Mr. Lewis is mistaken.  Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  In order to meet the requirement of particularity, a plaintiff "must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the

fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (quoting *Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)). The plaintiff's fraud claim, like his FDCPA claim, does not contain any factual allegations against Bank of America.

Mr. Lewis included in his objections new factual allegations not contained his complaint, but to no avail. The allegations do not save the FDCPA claims because Bank of America assigned the mortgage to Nationstar before the plaintiff mailed Bank of America a debt validation request. Bank of America therefore was not a debt collector subject to the requirements of the FDCPA at the time Mr. Lewis mailed the defendant a debt validation request. The additional factual allegations do not save the plaintiff's fraud claim because Mr. Lewis does not plead that Bank of America made any misrepresentations, that it acted with fraudulent intent, or that Mr. Lewis suffered any injuries as a result of the purported fraud.

In its response to the plaintiff's objections, Bank of America agreed with Judge Randon's report in its entirely except for his recommendation to dismiss the complaint without prejudice. Bank of America asks the Court to adopt Judge Randon's recommendation but to consider dismissing the plaintiff's complaint with prejudice. That request is appropriate. Dismissal for failure to state a claim is an adjudication on the merits, and therefore is a dismissal "with prejudice." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004). The plaintiff has not asked for leave to amend his complaint, and an amendment would not be appropriate if it were futile. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). Mr. Lewis has not amended his complaint, and it is unlikely that

-7-

he could state a claim for relief against Bank of America.  Therefore, the complaint will be dismissed with prejudice against this defendant.

B.  Nationstar Mortgage's Motion for Judgement on the Pleadings

Judge Randon concluded that the plaintiff's complaint fails to state a claim against Nationstar for violation of the FDCPA or fraud.  He observed that on December 17, 2012, Nationstar sent the plaintiff several documents, one of which fully complied with the initial notification requirements of 15 U.S.C. § 1692g(a), and therefore no violation of the FDCPA occurred. Judge Randon also concluded that the plaintiff failed to state a claim for fraud.  He observed that the plaintiff alleged that Nationstar's report to Experian that his mortgage account was a "Bank adjustment/Deed in lieu of foreclosure/bank liquidation" was fraudulent.  Judge Randon said that the plaintiff's complaint provides few details of fraud: he alleges that he never signed a deed in lieu of agreement, never had an account with Nationstar, and therefore Nationstar committed fraud.  But those allegations are insufficient.  More fundamentally, the plaintiff did not contest that his loan was in default and subject to foreclosure on the date Experian notified him of Nationstar's report.  Judge Randon also noted that the plaintiff did not contend that the alternate entries — bank adjustment or bank liquidation — were fraudulent or, in way, improper.

Once again, Mr. Lewis objects to Judge Randon's conclusion that his fraud allegations are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure.  But as noted earlier, Mr. Lewis does nor read Rule 9(b) correctly.  He has made no fraud allegations against Nationstar  "with particularity."  The plaintiff alleges that his credit report showed that his mortgage account was a "Bank adjustment/Deed in lieu of foreclosure/bank liquidation," and he insists that he never signed a deed in lieu of foreclosure agreement, did not have an account with Nationstar, and therefore

-8-

Nationstar committed fraud.  However, Mr. Lewis does not contest that his loan was in default and subject to foreclosure or that his loan was foreclosed and his debt was "adjusted."  Therefore, Mr. Lewis has not shown any false statement by Nationstar or any injury resulting from the defendants' alleged fraudulent conduct.  The plaintiff's claim for fraud fails as a matter of law.

Mr. Lewis does not contest that he also failed to state a claim for relief against Nationstar under 15 U.S.C. § 1692g(a).  However, Mr. Lewis insists that Nationstar violated 15 U.S.C. § 1692e(2).  That statute states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2) The false representation of--
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

Mr. Lewis contends that Nationstar falsely represented the legal status of his debt as a "bank adjustment/deed in lieu of foreclosure/bank liquidation."  As noted above, the plaintiff's argument fails because he does not does not contest that his loan was in default and subject to foreclosure or the entries "bank adjustment" or "bank liquidation" on his credit report were inaccurate.

Mr. Lewis filed an offer of proof on January 10, 2014 consisting of a Transunion credit report stating that his account with Nationstar was closed on April 18, 2013, the date of the sheriff's sale.  The offer of proof does not change the Court's analysis.  There is no evidence that Nationstar improperly conducted a sheriff's sale.  Additionally, Mr. Lewis attached eviction papers that Nationstar filed in state court, in which Nationstar represented that "there is no other pending or resolved [sic] civil action arising out of the same transaction or occurrence alleged in this complaint."  Although Nationstar's representation is inaccurate, the plaintiff's offer of proof does

not cure the deficiencies in the plaintiff's fraud or FDCPA claims, as that representation has nothing to do with the underlying transactions and reports challenged by the plaintiff. The plaintiff also alleges that Nationstar no longer claims ownership in the property but that Schneiderman & Sherman have filed suit in state court to evict him from his home. The plaintiff appears to misread his credit report. The credit report shows that his account with Nationstar was closed after Nationstar purchased his home on April 18, 2013 at the sheriff's sale. The credit report does not provide any evidence that Nationstar no longer believes that it has an ownership interest in the property.

The plaintiff also appears to challenge the assignment of the plaintiff's mortgage from Bank of America to Nationstar. The plaintiff's argument is unclear, but to the extent Mr. Lewis challenges the validity of the assignment through a false or robo-signed notary's signature, he fails to state a valid claim. The plaintiff's mortgage note expressly provides that MERS acted as the nominee for the "Lender . . . and Lender's signature and assigns." Dkt. #21-2. Moreover, the plaintiff has not even suggested that he is in danger of having to pay the same mortgage debt twice. *See Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 906 (E.D. Mich. 2012).

On January 29, 2014, the plaintiff filed another offer of proof challenging the assignment of his mortgage. He attached a Pooling Service Agreement, and cites New York trust law and the Internal Revenue Code. Dkt. #46. The plaintiff's argument is again unclear but he seems to contend that the defendants were required, but failed, to establish a record chain of title before the sheriff's sale. [dkt. #46]. Under Michigan law,

> [i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 32161 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

-10-

Mich. Comp. Laws Ann. § 600.3204(3).   It is undisputed that Nationstar is not the original mortgagee.  Accordingly, section 600.3204(3) required Bank of America to establish a record chain of title.   However, even if any of the alleged defects in the chain of title are true, there is no basis to undo the foreclosure sale.  In *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 825 N.W.2d 329 (2012), the Michigan Supreme Court made clear that failure to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute does not render flawed foreclosures void but merely voidable.  The court held that to set aside a foreclosure sale, a plaintiff must establish that he was prejudiced by the defendant's failure to comply with section 600.3204.  *Id.* at 115, 825 N.W.2d at 337.  "To demonstrate such prejudice, [a plaintiff] must show that [he] would have been in a better position to preserve [his] interest in the property absent defendant's noncompliance with the statute."  *Id.* at 115-16, 825 N.W.2d at 337.  Examples of evidence tending to show prejudice include whether a plaintiff was led to believe that a sale had not taken place, the plaintiff acted promptly after he became aware of the facts on which he based his complaint, the plaintiff made an effort to redeem the property during the redemption period, and the defendant relied on the validity of the sale by taking steps to protect its interest in the property.  *Kim*, 493 Mich. at 121, 825 N.W.2d at 340 (Markman, J., concurring).  Mr. Lewis failed to demonstrate how any of the defects alleged in the record title prejudiced him; he has made no allegation that he would have been in a better position to preserve his interest in the property absent the defendants' noncompliance with the statute.  *Kim*, 493 Mich. at 116, 825 N.W.2d at 34.  Therefore, the plaintiff's offer of proof cannot save his claims.

On October 11, 2013, Bank of America filed a motion to strike the plaintiff's October 11, 2013 offer of proof as untimely.  [dkt. #37]  The offer of proof relates to the assignment between

Countrywide and Bank of America.  Judge Randon recommended that the Court deny the defendant's motion as moot because the plaintiff's offer of proof cannot fix the deficiencies in the complaint.  For the reasons discussed above, the Court agrees.

On December 18, 2013, Bank of America filed a motion to strike  the plaintiff's November 22, 2013 offer of proof.  [dkt. #43]  Mr. Lewis submitted a laboratory report comparing the signatures on the assignment and alleging that the signature on the assignment was fraudulent.  For the reasons already stated, the Court will deny the defendant's motion as moot because the plaintiff's offer of proof cannot fix the deficiencies in the complaint.

### C. Schneiderman & Sherman's Motion for Summary Judgment.

Defendant Schneiderman & Sherman argue in their motion that the fraud claims against them are defective for the reasons cited by the other defendants.  They also contend that they have complied with the FDCPA.  Judge Randon agreed that the complaint fails to plead fruad, but he suggested that the plaintiff does state a plausible FDCPA against Schneiderman & Sherman for failing to send the plaintiff its own verification of his debt.

The plaintiff objected to the report's conclusion that he did not plead his fraud claims properly, but, for the reasons already discussed, those objections lack merit.

Schneiderman & Sherman objected to Judge Randon's conclusion that the law firm violated the Fair Debt Collection Practices Act by failing to mail Mr. Lewis a debt validation letter. The defendant believes that the statute does not require a debt collector to mail a debt validation letter to a consumer if another debt collector previously mailed the consumer a letter validating the debt. District courts are divided on this question and the Sixth Circuit has yet to provide guidance. *Compare Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1221-22 (W.D. Wash. 2011)

-12-

(holding that the notice requirement applies only to the first debt collector that communicates with the consumer) *with Wright v. Ocwen Loan Servicing, LLC*, 12-14762, 2013 WL 5532687 (E.D. Mich. Oct. 7, 2013) (reading § 1692g(a) to refer to all debt collectors in the absence of binding precedent from the Sixth Circuit and in light of the fact that the statutory language is capable of multiple meanings), *and Stair ex rel. Smith v. Thomas & Cook*, 254 F.R.D. 191, 196-97 (D.N.J. 2008) (construing § 1692g(a) to apply to all debt collectors in the absence of a clear statutory directive, the ambiguity in the statutory language, and the remedial nature of the statute). Judge Randon strongly agreed with the reasoning in *Stair* and recommended that the Court apply it by analogy to 15 U.S.C. § 1692g(2).

Resolution of the issue requires statutory interpretation. "[T]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell J., concurring). The Court must give the words used in a statute their "ordinary meaning." *Moskal v. United States*, 498 U.S. 103, 109 (1990); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) (stating that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose" (citing *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982))).

Section 1692g(2), Title 15, United States Code states:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

-13-

It is settled law that the FDCPA applies to lawyers collecting debts on behalf of clients. *Heintz v. Jenkins*, 514 U.S. 291, 294-95 (1995). Schneiderman & Sherman does not dispute that the Act applies to attorneys and law firms, but it insists that if there are two debt collectors, the Act is satisfied if *either* debt collector mails a debt verification letter to the consumer. However, the statute says that debt verification must be "mailed to the consumer by *the* debt collector." 15 U.S.C. § 1692g(2) (emphasis added). Congress could have specified that the requirements of the Fair Debt Collection Practices Act are satisfied if "any" or "either" debt collector mails a debt verification letter to the consumer. It did not. The use of the definite article is significant. *See Comm'r of Patents v. Whiteley*, 71 U.S. 522, 530 (1866) ("Had it been the intention of Congress to restrict the remedy of reissue to the assignee of the *whole* interest, it would have been easy to use words of limitation, or to have used the restrictive and definite article 'the' instead of the distributive pronoun 'any,' before the word 'assignment.'"); *Gibbons v. Ogden*, 22 U.S. 1, 85, 6 L. Ed. 23 (1824) (concluding that the omission of the "definite article *the*" was not accidental but "studiously made"); *see also Rapanos v. United States*, 547 U.S. 715, 716 (2006) ("The use of the definite article 'the' and the plural number 'waters' show plainly that § 1362(7) does not refer to water in general, but more narrowly to water '[a]s found in streams,' 'oceans, rivers, [and] lakes.'") (internal citation omitted); *Freytag v. C.I.R.*, 501 U.S. 868, 901-02  (1991) (Scalia, J., concurring) (noting that the Appointments Clause refers to "*the* Courts of Law" and finding that "this does not mean *any* 'Cour[t] of Law'").

"'In construing [a] statute, [the] definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to [the] indefinite or generalizing force [of] 'a' or 'an.'" *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012) (quoting *Onink v.*

*Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002)).  Webster's Collegiate Dictionary Tenth Edition 1221 (1997) defines the word "the" as specifying that a following noun "is a unique or a particular member of its class."  From that language flows the conclusion that a debt collector does not comply with the statute if any of several debt collectors mails the consumer a debt verification letter.  Congress required *the* debt collector to mail a debt verification letter to the consumer if the consumer notifies that debt collector in writing that he or she is contesting the debt.  That requirement exists even if another debt collector already mailed a debt verification letter to the consumer.

This interpretation of the text is consistent with the remedial purpose of the FDCPA.  Congress passed the Act when faced with "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692.  Congress intended "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  *Ibid.*  The Sixth Circuit has recognized that Congress intended "the FDCPA to have a broad remedial scope."  *Broadnax v. Greene Credit Serv.*, 106 F.3d 400, at *4 (6th Cir. 1997).   To that end, "Congress incorporated a broad definition of both 'debt' and 'debt collector' into the FDCPA in order to achieve its remedial purpose."  *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 167-68 (3d Cir. 2007).  "Because the FDCPA is a remedial statute, [the Court must] construe its language broadly, so as to effect its purpose."  *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (internal citations omitted). Requiring each separate debt collector contacted by the consumer to provide independent verification of the debt ensures that the consumer receives consistent information from each debt

-15-

collector, reduces the likelihood that the debt collector is pursuing debts from innocent consumers, and enhances communication between debt collectors and consumers.  Requiring individual (and not collective) notification imposes no unreasonable burden on debt collectors; after all, the statute requires notification.  "The debt collector is assumed to be a sophisticated business entity familiar with the law, whereas the least sophisticated consumer is anything but, by definition." *Turner v. Shenandoah Legal Grp., P.C.*, 3:06CV045, 2006 WL 1685698, at *11 (E.D. Va. June 12, 2006). "'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.'" *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007) (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993)).  It is sensible to conclude that "the least sophisticated consumer" may need a reminder of whom she is dealing with and whether the debt she is contesting is valid.

Moreover, this interpretation is consistent with the Federal Trade Commission's Commentary to the FDCPA.  That commentary, although non-binding, was intended to serve as a guideline to clarify the staff interpretations of the Act.  The relevant FTC commentary states that

> attorney debt collector[s] must provide the required validation notice, even if a previous debt collector (or the creditor) has given such notice.  A debt collector does not comply with the obligation to verify the debt simply by including proof with the first communication to the consumer.

FTC Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02 (December 13, 1988).  The FTC commentary refers to the validation requirement in 15 U.S.C. 1692g(a), but the comment applies with equal force to 15 U.S.C. § 1692g(b).

Schneiderman & Sherman argues that even if 15 U.S.C. 1692g(2) applies to each debt collection agency, Mr. Lewis did not request debt verification from Schneiderman & Sherman.

After all, Mr. Lewis' letter was addressed to "PRESIDENT NATIONSTAR MORTGAGE," and merely copied to Schneiderman & Sherman, and therefore it could be found that the plaintiff intended his communication to inform Schneiderman & Sherman of his request to Nationstar. Perhaps, but that does not entitle this defendant to judgment as a matter of law. The Court must deny summary judgment where, as here, a genuine dispute of material fact exists. Although the letter was addressed to the President of Nationstar Mortgage, the salutation on the letter was addressed "To Whom It May Concern," and Mr. Lewis mailed the letter to Schneiderman & Sherman, PC. A jury reasonably could find that Mr. Lewis requested debt validation from the defendant and therefore summary judgment is inappropriate.

The objections by defendant Schneiderman & Sherman will be overruled.

III.

After fresh review of the motions and responses, the reports and recommendations, and the parties' objections and responses, the Court concludes that the magistrate judge correctly applied the relevant law to the facts established by the record.

Accordingly, it is **ORDERED** that the objections to the reports and recommendations by the plaintiff [dkt. #32, 42] and defendant Schneiderman & Sherman, PC [dkt. #41] are **OVERRULED**, and the magistrate judge's reports and recommendations [dkt. #30, 40] are **ADOPTED**.

It is further **ORDERED** that defendant Bank of America's motion to dismiss [dkt. #11] is **GRANTED**.

It is further **ORDERED** that defendant Nationstar Mortgage's motion for judgment on the pleadings [dkt. #26] is **GRANTED**.

-17-

It is further **ORDERED** that defendant Schneiderman & Sherman, PC's motion for summary judgment [dkt. #21] is **GRANT IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. #28] is **DENIED**.

It is further **ORDERED** that defendant Bank of America's motions to strike the plaintiff's offers of proof [dkt. #37, #43] are **DENIED as moot**

It is further **ORDERED** that the complaint is **DISMISSED** in its entirety against defendants Bank of America and Nationstar Mortgage.

It is further **ORDERED** that the fraud claims in the complaint are **DISMISSED** against defendant Schneiderman & Sherman, PC.

It is further **ORDERED** that the matter is referred to a magistrate judge to be selected by the

Clerk of Court at random under the previous reference order [dkt. #7] to ready the matter for trial,

and to conduct a trial if the parties consent under 28 U.S.C. § 626(b)(1)(c).


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 18, 2014


**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 18, 2014.

s/Shawntel Jackson
SHAWNTEL JACKSON